**LOCAL NO. 552, UNITED BRICK AND CLAY WORKERS OF AMERICA, AFL–CIO, Plaintiff,**

v.

**HYDRAULIC PRESS BRICK COMPANY,**

and

**Streator Brick Systems, Inc., Defendants.**

**No. 73 C 149(4).**

United States District Court, S. D. Missouri, E. D.

Nov. 29, 1973 and Jan. 28, 1974.

820

Schuchat, Cook & Werner, St. Louis, Mo., for plaintiff.

Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for Streator Brick Systems, Inc.

Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for Hydraulic Press Brick Co.

MEMORANDUM

NANGLE, District Judge.

This is an action commenced pursuant to Section 301 of the Labor Management Relations Act ("the Act"), 29 U.S. C. § 185, by a labor organization against a past and a present employer for enforcement of the arbitration provisions of the subject collective bargaining agreements.

The action is before the Court upon the motions of (1) the plaintiff Local No. 552, United Brick and Clay Workers of America, AFL–CIO ("the Union") for summary judgment; and (2) defendant Hydraulic Press Brick Company ("Hydraulic") (a) to dismiss the complaint, (b) for summary judgment, and (c) for leave to file a counterclaim against the Union.

The Union makes two claims in the instant complaint.

By the first claim the Union seeks arbitration of a labor dispute involving vacation pay accruing in 1972. Although the Union appears to allege the existence of one labor agreement from which the duties of the parties to arbitrate arise, it clearly appears from the undisputed facts, supported by labor agreement memoranda, that the Union seeks to enforce the duties of Hydraulic and of Streator Brick Systems, Inc. ("Streator"), to arbitrate as they arise from the separate labor agreements executed by Hydraulic and by Streator. The Union prays alternatively for bi-partite arbitration, i. e. arbitration of the liability for the unpaid vacation pay in separate arbitration proceedings by the Union against Hydraulic and against Streator; or for tri-partite arbitration, i. e. the arbitration of the disputes against Hydraulic and against Streator in a joint proceeding.

By its second claim the Union seeks to compel resubmission to arbitration of an "off-standard pay" dispute between the Union and Hydraulic.

I. *Undisputed Facts*

After examining the pleadings and the affidavits offered by the parties, the Court finds that the following facts are undisputed:

A. *Vacation pay dispute (first claim)*

1. The plaintiff union is an unincorporated labor organization representing employees in industries affecting commerce within the meaning of Sections 2(5) and 301 of the Act and maintains its principal office in Streator, Illinois.

2. Defendant Hydraulic is a corporation organized under the laws of Missouri with its principal office in St. Louis, Missouri. Hydraulic is an employer within the meaning of Sections 2(2) and 301 of the Act.

3. Defendant Streator is a corporation organized under the laws of Illinois with its principal office in Streator, Illinois. Streator is an employer within the meaning of Sections 2(2) and 301 of the Act.

4. On or about May 1, 1969, the Union and Hydraulic entered into a collective bargaining agreement which was to be effective from May 1, 1969, until April 30, 1972. This agreement (hereafter "the Hydraulic labor agreement") covered the various terms and conditions of employment for the production and maintenance employees in the bargaining unit represented by the Union at Hydraulic's Streator, Illinois plant (hereafter "the plant"). This plant was engaged in the production of face brick.

5. The Hydraulic labor agreement provides for vacation pay in Article VI. Generally, entitlement to vacation pay is stated in Section 1 thereof as follows:

All employees who have completed one (1) year or more of continuous service with the Company [on] the first anniversary date of their employment and have worked eighty percent (80%) of the available work time during the last anniversary year and who are on the payroll on the anniversary date shall receive vacations with pay . . . (Art. VI, Sect. 1.)

This agreement also provides, in Article VIII, a mandatory procedure for settling grievances. This procedure has four steps, the last being "impartial arbitration for final and binding determination". (Art. VIII, Sect. 2.) The term "grievances" is defined as "differences or disputes between the employee or the Union and the Company relating to the application or meaning of this contract". (Art. VIII, Sect. 2.)

6. In September, 1971, Hydraulic decided to close and permanently shut down the plant. On or about September 24, 1971, it gave written notice of this decision to its customers, and on or about September 27, 1971, to its employees and the Union.

7. After Hydraulic announced the closing of the plant, Union representatives actively assisted representatives of Streator to raise funds with which to purchase the plant so that the plant would not close but would continue in operation. Some members of the Union are shareholders of defendant Streator.

8. Bruce Mallonee, currently the President of Streator, during September, 1971 while the Sales Manager of Hydraulic, participated in the negotiation of the sale of the plant assets to Streator. Concurrently the Union was negotiating with Mallonee, Streator's representative, a collective bargaining agreement ultimately executed and dated January 3, 1972.

9. By November 19, 1971 Hydraulic had ceased producing face brick at the plant and soon thereafter Hydraulic terminated all but eleven of the Union's bargaining unit employees. Prior to these terminations, approximately one hundred and ten employees belonging to the Union's bargaining unit had been employed.

10. On or about January 3, 1972, the Union and Streator executed a collective bargaining agreement. This agreement (hereafter "the Streator labor agreement") contains the following caption or heading:

CHANGES AND/OR AMENDMENTS TO THE EXISTING CONTRACT BETWEEN STREATOR BRICK COMPANY DIVISION, HYDRAULIC PRESS BRICK COMPANY AND LOCAL #552, UNITED BRICK AND CLAY WORKERS OF AMERICA, AFL–CIO, STREATOR, ILLINOIS.

This agreement provided in pertinent part as follows:

1. Local #552 . . . does grant the new Streator Brick Systems, Inc. company a two year extension of the above contract, subject to the following changes and/or amendments. The termination date of the extended contract shall be midnight, April 30th, 1974.

\* \* \* \* \* \*

7. The new Streator Brick Systems, Inc. company shall not be forced to recognize or arbitrate grievances involving any past practice of the previous owner of the plant, namely, Streator Brick Company Division, Hydraulic-Press Brick Company.

This agreement did not change or eliminate the grievance settlement provisions found in Article VIII of the Hydraulic labor agreement. This agreement did modify the vacation pay provisions of the Hydraulic labor agreement and it was signed by four members of the Union's bargaining committee, including John Kotansky, and by Bruce Mallonee, as President and Manager of Streator.

11. On or about January 19, 1972, Streator contracted with Hydraulic to purchase the plant from Hydraulic. The parties agreed to close the sale on January 21, 1972. On the closing date Hydraulic terminated the employment of the remaining eleven employees. The sale contract provided in pertinent part as follows:

6. . . . Hydraulic shall hold Streator Brick harmless from any claims by Hydraulic's employees for vacation pay due or alleged to be due at the Closing Date.

12. There is a dispute as to when Streator began operating the plant. John Kotansky states (affidavit filed June 11, 1973, page 2, para. 6) that Streator resumed production of face brick in the plant on or about January 10, 1972, before the sale contract was executed. Charles W. Emmerich states (affidavit filed July 26, 1973, page 4, para. 16) that Streator did not resume production before January 21, 1972.

13. When Streator began to operate the plant it called to work the Union's bargaining unit employees on the Hydraulic seniority list. About ninety such employees eventually returned. No new bargaining unit employees were initially hired. The employees' seniority at Streator was carried over from their prior seniority at Hydraulic.

14. By a notice posted on or about April 17, 1972, Streator notified the employees that it would pay them vacation pay in 1972 based on their years of service for Hydraulic and Streator equal to only 27.6% of the employees' vacation pay entitlement for 1972. Streator stated that this percentage represented the portion of the year from January 21, 1972, to May 1, 1972 (the beginning of the vacation period) for which the employees worked for Streator. Streator refused, and continues to refuse, to pay the employees their full 1972 vacation pay entitlement. Streator was willing to give the employees the amount of vacation time to which they were entitled under Article VI of the Streator labor agreement based on their combined service with Hydraulic and Streator, but would only pay an employee 27.6% of his vacation pay for the corresponding number of weeks.

15. Hydraulic has refused to pay its former employees any vacation pay at all due in 1972 based upon the employees' employment with Hydraulic prior to the date it sold the plant to Streator.

16. A written grievance for full vacation pay was filed against Streator on May 2, 1973. This grievance resulted in a meeting between Bruce Mallonee, Streator's President, and the union shop committee which included John Kotansky. Mallonee denied the grievance, it being Streator's position that the rest of the vacation pay was owed by Hydraulic.

17. No written grievance was filed against Hydraulic. However, Union representatives met with and conferred with representatives of Hydraulic on numerous occasions since May, 1972 when the Union made demand upon Hydraulic for the disputed vacation pay. Hydraulic has refused to pay or acknowledge any liability for the vacation pay.

18. By letter dated February 13, 1973, the Union requested that Hydraulic enter tri-partite arbitration with it and Streator over the vacation pay grievance. Hydraulic refused this written request and a subsequent oral request. By its answer filed in this action, Streator denies that it has a duty to arbitrate the vacation pay grievance with the Union.

19. Of the former management employees of Hydraulic who worked at the plant before its sale, only one is still employed by the company. Some of Hydraulic's former management personnel are now working at the plant for Streator and some have moved from Streator, Illinois to find work elsewhere.

20. Hydraulic is not presently engaged in any business operation in Streator, Illinois and has no employees there. The employee time cards and other plant work records concerning the off-standard pay grievance are in the possession of Streator at the plant.

### B. *Off-standard pay* (Second claim)

1. On or about June 10, 1971, the Union and Hydraulic, pursuant to the Hydraulic labor agreement, mutually selected Wendell W. Wright, Esquire, to serve as arbitrator in a dispute pertaining to "off-standard pay". Off-standard pay is pay at a special rate established for jobs on which a piece work rate is

inappropriate because of the nature of the work. This grievance was designated as American Arbitration Association ("AAA") Case No. 51 30 0301 71–W.

2. On or about August 9, 1971, the Union and Hydraulic agreed to a trial settlement of this off-standard pay grievance. By this agreement the Union and Hydraulic agreed to work under the settlement provisions until November 1, 1971. After forty-five days of the trial period, the Union had the right to withdraw from this tentative settlement. If the settlement worked out and became permanent after the trial period of ninety days, Hydraulic agreed to pay all back off-standard pay that Hydraulic disallowed after March 11, 1971. However, if the settlement did not become permanent, the parties agreed that "the pending arbitration will be resumed before Arbitrator Wright, with both the Company and the Union being entitled to all claims and defenses available in the pending arbitration".

3. The settlement did not become permanent and Hydraulic did not pay the back off-standard pay.

4. By letter dated February 7, 1972 the AAA requested information from Hydraulic and the Union as to the status of this grievance. By letter dated February 15, 1972 Hydraulic advised the AAA that its Streator plant had been shut down and was sold and that it did not wish the case held open for any further action. AAA acknowledged receipt of Hydraulic's letter and notified the Union and Hydraulic that it would consider the matter withdrawn unless it heard to the contrary within seven days thereafter.

5. The Union informed Hydraulic in meetings with its representatives subsequent to February 18, 1972 that the Union considered the off-standard pay matter open and requested that the matter be resubmitted to Mr. Wright for arbitration pursuant to the settlement memorandum. These discussions took place in the same meetings at which the vacation pay issue was discussed. Hydraulic refused to resubmit the off-standard pay matter to Arbitrator Wright on the grounds that the grievance was withdrawn.

6. By letter dated February 13, 1973, from the Union's attorney to Hydraulic's attorney, the Union requested that the off-standard pay arbitration matter be resubmitted to Arbitrator Wright. By letter dated February 15, 1973, Hydraulic refused to arbitrate this matter. This exchange of letters followed the series of conferences between representatives of Hydraulic and the Union which failed to resolve the dispute.

## II. *Hydraulic's Motion to Dismiss*

Hydraulic moves to dismiss the vacation pay claim on the grounds that (1) the Court lacks subject matter jurisdiction, and (2) the Union fails to state "a cause of action".

Hydraulic attacks the existence of subject matter jurisdiction by arguing (a) that tri-partite arbitration is not provided for in *its* contract with Local 552, and (b) that the Union did not allege that it requested Hydraulic to enter bi-partite arbitration or that Hydraulic breached its duty to so arbitrate. The Court agrees with Hydraulic's general assertion that the Union must plead a violation of its collective bargaining agreement for it to properly invoke the subject matter jurisdiction granted by 29 U.S.C. § 185.[1] Adams v. Budd Company, 349 F.2d 368 (3rd Cir. 1965). However, Local 552 has pleaded that both defendants are in violation of their contracts in that both refuse to pay the claimed vacation pay. Plaintiff also alleges that it requested of both defendants that this dispute be resolved by tri-partite arbitration, that Streator agreed to this, but that Hydraulic did not.

---

1. 29 U.S.C. § 185(a) grants subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization . . . ".

■ The Court is of the opinion that it has subject matter jurisdiction of this action and the power to order tri-partite arbitration. *See*, Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Association et al., 414 F.2d 1326 (2nd Cir. 1969), aff'ing 293 F.Supp. 1400 (S.D.N.Y.1968). Furthermore, in light of plaintiff's allegation that "[t]he Union has met with and conferred with representatives of Hydraulic and Streator on numerous occasions in an effort to resolve said dispute . . . but the parties hereto have been unable to resolve said dispute", the failure of plaintiff to allege that it requested Hydraulic to engage in *bi-partite* arbitration does not limit the power of this Court to order such arbitration, if such a remedy is deemed appropriate. Local 198, United Rubber, Cork, Linoleum & Plastic Workers of America v. Interco, Inc., 415 F.2d 1208, 1209–1210 (8th Cir. 1969) (grievance 11–66), aff'ing 289 F.Supp. 215 (E.D.Mo.1968).

■ Hydraulic asserts that the Union fails to state a cause of action upon which relief can be granted. The Court will consider this a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. The grounds for this motion are that (a) the vacation pay dispute is not within the arbitration provision of Hydraulic's collective bargaining agreement with the Union, (b) Hydraulic had no duty to arbitrate after the expiration of this contract,[2] and (c) the arbitration provision does not require tri-partite arbitration.

■ The Court cannot accept, as determinative of the issue of whether the vacation pay dispute is arbitrable under Hydraulic's labor agreement, Hydraulic's assertion that there was no explicit provision therein for vacation pay upon termination of employment. In Local Union No. 186, United Packinghouse Food and Allied Workers, AFL–CIO v.

Armour and Company, 446 F.2d 610, at 612 (6th Cir. 1971), cert. den. 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231, the Court recognized that "[m]any tribunals have taken the view that vacation pay is simply an alternate form of wages, *earned at the time of other wages*, but whose receipt is delayed". (emphasis ours.) It is the opinion of the Court that on the face of the pleadings the Union has made "a claim which on its face is governed by the contract" to which Hydraulic is a party. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, at 568, 80 S.Ct. 1343, at 1346, 4 L.Ed.2d 1403 (1960).

■ Hydraulic argues that by its labor agreement the duty to arbitrate expired with the expiration of the contract on April 30, 1972. This agreement in Section 7 of Article II provides that the

> provisions of this Agreement shall be binding on the Employer, its heirs, successors or assignees and the Union during the term of the Agreement and any renewal hereof.

The Court does not believe this provision eliminates Hydraulic's duty to arbitrate, after the agreement's expiration date, disputes which were based upon conditions existing prior to the expiration date.[3] *See*, Minnesota Joint Board v. United Garment Manufacturing Company, 338 F.2d 195, 200–201 (8th Cir. 1964).

■ Contrary to Hydraulic's assertion, the Streator labor agreement did not provide for Streator's "assumption" of Hydraulic's liability for the unpaid vacation pay. The Streator labor agreement purported to be a two-year "extension" of the Hydraulic labor agreement. However, the Court construes the term "extension" to provide for the incorporation by reference of those provisions in the Hydraulic labor agreement

---

2. This ground is also asserted *infra* in support of Hydraulic's motion for summary judgment.

3. An arbitrator may decide that the subject vacation pay was "earned" prior to the expiration of the labor agreement. *See*, Local Union No. 186, *supra*.

that were not modified or eliminated by the Streator labor agreement.

■ Furthermore, the failure of Hydraulic's labor agreement to require tri-partite arbitration does not prevent the Court from ordering it. Columbia Broadcasting · System, Inc., *supra.* Therefore, the Court will deny Hydraulic's motion to dismiss the vacation pay claim.

### III. Hydraulic's Motion for Summary Judgment

Hydraulic asserts as grounds for its motion for summary judgment on the Union's first claim, i. e. the vacation pay dispute, that (a) when the vacation pay dispute arose, Hydraulic's duty to arbitrate had expired; and (b) the Union is barred by *estoppel* and *laches* from enforcing any duty of Hydraulic to arbitrate this dispute. With regard to the off-standard pay dispute, Hydraulic asserts that the Union *waived* its right to compel resubmission of the dispute to arbitration, and that the Union is barred by *laches.*

The Court previously overruled Hydraulic's assertion that its duty to arbitrate has expired.

■■ Hydraulic asserts the remaining grounds of *estoppel, laches,* and *waiver* as affirmative defenses to the Union's two claims. These defenses were, *inter alia,* the subjects of the affidavits filed by the Union and by Hydraulic.

In light of the resolution by the Court of the Union's motion for summary judgment, *infra,* the Court believes that the substantive merits of these three defenses must be disposed of in the arbitration proceedings to be ordered.

The Court finds and concludes that, with respect to the vacation pay dispute, pursuant to the Hydraulic and the Streator labor agreements, all three parties are required to arbitrate. The scope of the provisions that define the arbitrable issues is broad and includes both the vacation pay disputes and the assertion by Hydraulic that the Union's

right to arbitrate is barred by *estoppel* and *laches. See,* International Union of Operating Engineers, Local 150, AFL–CIO v. Flair Builders, Inc., 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972).

The same can be said with regard to the off-standard pay dispute. Hydraulic clearly has a duty under the trial settlement agreement to resubmit the dispute to arbitration since the trial settlement did not become permanent. Hydraulic's asserted defenses of *laches* and *waiver* are arbitrable under the broad scope provision of the Hydraulic labor agreement. *Flair Builders, supra.*

The Court will deny Hydraulic's motion for summary judgment.

■ An alternative basis for the Court's denial of this motion is the Court's finding, after close examination of the pleadings and affidavits on file, that there are thereby presented genuine issues of material fact. A summary judgment for Hydraulic would be inappropriate. *See,* Traylor v. Black, Sivalls & Bryson, 189 F.2d 213, 216 (8th Cir. 1951).

### IV. The Union's Motion for Summary Judgment

The Union has moved for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure, upon both its first and second claims, i. e. the vacation pay and the off-standard pay disputes. The Union seeks either bi-lateral or tri-lateral arbitration of the vacation pay dispute, and the resubmission to the arbitrator of the off-standard pay dispute.

Rule 56 provides that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed.R.Civ.Pro. 56(c).

#### A. The vacation pay dispute

It is uncontroverted that the arbitration provisions of the Hydraulic labor

agreement and the Streator labor agreement are broad in scope. Under both agreements the vacation pay dispute is clearly arbitrable. Under both agreements arbitration is mandatory and the arbitrator's decision is binding upon the parties. Both Hydraulic and Streator have breached the subject labor agreements by refusing to arbitrate this grievance.

The national labor policy is committed to the enforcement of arbitration provisions in collective bargaining agreements. Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L. Ed.2d 972 (1957); United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

The Court is of the opinion that, under the Hydraulic and the Streator labor agreements, the Union is entitled to submit the vacation pay disputes against both Hydraulic and Streator to arbitration. The labor agreements so provide.

The Court is further of the opinion that the arbitration of these disputes between the Union and Hydraulic, and between the Union and Streator should be joined in one arbitration proceeding before one arbitrator. The arbitration provisions of the two labor agreements are identical and the fact that the vacation pay entitlement and computation provisions of the two labor agreements vary one from the other only militates in favor of joint arbitration. Separate arbitration increases the possibility of inconsistent decisions. As the Court stated in *Columbia Broadcasting System, Inc., supra at* 293 F.Supp. 1403,

> Compelling all three parties to the dispute to submit their grievances to the same arbitration is practicable, economical and convenient for the

parties and the arbitrator. It is sound because it not only avoids duplication of effort but the possibility of conflicting awards. Considering all the circumstances, we think consolidation of the arbitrations is the appropriate remedy.

Therefore, the Court will order tripartite or joint arbitration of the vacation pay disputes.

The effect of the "hold harmless" provision in the sale contract is a matter to be separately litigated after the arbitrator has decided the parties' rights under the arbitration provisions of the labor agreements. *See, Steelworkers, supra,* 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L.Ed.2d 1424.

### B. *The off-standard pay dispute*

The Court is further of the opinion that the off-standard pay dispute must be resubmitted for arbitration as required by both the mandatory resubmission provision of the trial settlement agreement and the broad mandatory arbitration provision of the Hydraulic labor agreement. The Court will so order.

### V. *Arbitration of the Vacation Pay Disputes*

The Court finds that the issues to be arbitrated in a single proceeding by a single arbitrator regarding the Union's claims for vacation pay are:

(1) whether Hydraulic Press Brick Company is liable under the terms of its collective bargaining agreement with Local No. 552, executed on May 1, 1969, for the vacation pay to which the employees of the Local No. 552 bargaining unit at the subject plant were entitled in 1972 and which vacation pay is as yet unpaid; and

(2) whether Streator Brick Systems, Inc. is liable for the vacation pay to which the employees of the Local No. 552, bargaining unit at the subject plant were entitled in 1972 and which vacation pay is as yet unpaid, under the terms of either the collective bar-

gaining agreement executed by Local No. 552 and Hydraulic on May 1, 1969, or the collective bargaining agreement executed by Local No. 552 and Streator Brick Systems, Inc. on January 3, 1972.

Hydraulic and Streator may raise any defense, legal or equitable, in the arbitration proceeding, to the claims of the Union to the subject vacation pay. All issues and defenses raised by the parties should be considered *de novo* by the arbitrator and free from the "constraint of determinations of" this Court. Local Union No. 4, International Brotherhood of Electrical Workers, AFL–CIO v. Radio Thirteen-Eighty, Inc., 469 F.2d 610, at 615 (8th Cir. 1972).

## VI. Hydraulic's Motion for Leave to File a Counterclaim Against the Union

Hydraulic seeks leave to file a counterclaim against the Union, pursuant to Rule 13(f), Federal Rules of Civil Procedure. The proposed counterclaim alleges that from September 27, 1971, when Hydraulic gave notice that economic conditions required that the plant be closed, through January 3, 1972, members and representatives of the Union "surreptitiously and without the knowledge of or disclosure to Hydraulic engaged in collective bargaining and negotiations with the defendant Streator concerning vacation pay for the 1972 vacation year, off-standard pay and other terms and conditions of employment contained in a collective bargaining agreement between Local 552 and Streator dated January 3, 1972 . . .". Hydraulic further alleges that representatives of the Union, who were also members of Streator sought to include in the plant sale contract provisions that undercut or repudiated Hydraulic's position on the vacation pay dispute. Hydraulic alleges that the Union failed to bargain collectively with it over the vacation pay and the off-standard pay disputes between November 19, 1971, and January 21, 1972; that this bargaining should have been engaged in *even though* the

Union's claims "would not have been obtained through free collective bargaining" (Proposed Counterclaim, para. 9); and that such failure was "contrary to the duties and responsibilities contained in and the intent of 29 U.S.C. § 158(b)(3)". Hydraulic also makes reference to the Union's "misuse of legal process to force what would not have been obtained, but should have been sought, through collective bargaining . . ." (Pro. Countercl., para. 10). Hydraulic prays for relief by way of declaratory judgment, injunction, actual and punitive damages, attorney's fees and costs.

■ Federal Rule of Civil Procedure 13(f) provides as follows:

When a pleader fails to set up a counterclaim through oversight, inadvertance, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment.

Leave to file may be denied if the Court concludes that the counterclaim is totally lacking in merit. 6 Wright and Miller, Federal Practice and Procedure, § 1430, pp. 154–155, n. 48 (1971 ed.).

■ This counterclaim alleges breach of a duty of the Union to bargain over the vacation pay and the off-standard pay disputes between the September decision of Hydraulic to close the plant and the January 21, 1972, sale closing. Whence this duty to bargain? From the face of the counterclaim it appears that this duty springs from § 8(b)(3) of the Act, 29 U.S.C. § 158(b)(3). If so, then the doctrine of pre-emption requires that Hydraulic seek its remedy before the National Labor Relations Board. *See,* San Diego Building Trades Council v. Garmon, 359 U.S. 236, 244–245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). From Hydraulic's October 5, 1973, reply memorandum of law, it appears that this duty is meant to be found in the Hydraulic labor agreement. Therefore, Hydraulic asserts, this counterclaim is brought under § 301 of the Act, 29 U.S.C. § 185, to which pre-emption is inapplicable. *See,* Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of

America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *cf.* Amalgamated Association etc. v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). Hydraulic then looks to the "duty of good faith and conduct in carrying out of every contract" that may be found in the common law and in 29 U.S.C. § 158(b)(3). The gist of this claim is that the Union, knowing it would prosecute its pay disputes against Hydraulic, and not wanting Streator to be held liable therefor, "covenanted not to sue" (in a manner of speaking) Streator in the Streator labor agreement, and also, through those persons who were both members of the Union and of Streator, agreed *with Hydraulic* to hold Hydraulic liable. Had it known that the Union would prosecute the disputes, Hydraulic asserts, it would not have agreed with Streator to the aforementioned "hold harmless" clause in the sale-contract.

■■■■ The Court is of the opinion that Hydraulic's proposed counterclaim does not state a claim upon which relief can be granted under § 301 and the Court will deny leave to file it. The Union, first, was under no duty to perform a useless act. In the counterclaim itself Hydraulic states that collective bargaining over the pay disputes would have availed the Union nothing. Second, the Union was under no duty to inform Hydraulic of its intention to prosecute the pay disputes except as is set out in the labor agreement's *mandatory* grievance procedures. The Union's failure to prosecute these disputes earlier than it has is asserted by Hydraulic in the form of equitable defenses to the pay claims. Third, the injuries or damages of which Hydraulic complains have not yet been sustained since Hydraulic has not yet been held by an arbitrator to be liable for the pay claims now being asserted by the Union. The Court believes that Hydraulic is attempting to litigate here as a claim for relief those facts which it cannot litigate here as affirmative defenses to the Union's pay grievances.

## ON MOTION TO AMEND

This action is before the Court on the motions of defendant Hydraulic Press Brick Company ("Hydraulic"), to amend the memorandum and order of the Court filed in this action on November 29, 1973, and of defendant Streator Brick Systems, Inc. ("Streator"), to amend or for reconsideration of the same order.

Hydraulic moves for the amendment of, or the deletion of, the italicized portions of the following sentences found in the Court's memorandum:

(1) "Streator refused, and continues to refuse, to pay the employees *their full 1972 vacation pay entitlement.*" (Para. 14 of *Undisputed Facts.*)

(2) *"Hydraulic has refused to pay its former employees any vacation pay at all due in 1972 based upon the employees' employment with Hydraulic prior to the date it sold the plant to Streator."* (Para. 15 of *Undisputed Facts.*)

Hydraulic also moves for an amendment of the issues formulated by the Court for submission to the arbitrator by the deletion of any reference to "the vacation pay to which the employees of Local No. 552 bargaining unit at the subject plant were entitled in 1972 and which vacation pay is as yet unpaid". The grounds asserted by Hydraulic for these amendments are that (a) whether there is any unpaid vacation pay due in 1972 to which Local 552 bargaining unit employees at the subject plant are entitled is an issue disputed by Hydraulic in its pleadings, affidavits and memoranda; (b) this issue goes to the merits of the vacation pay dispute and therefore is a matter for the arbitrator, not the Court to decide; and (c) the issues formulated by the Court are prejudical to Hydraulic's position in arbitration. The Court will sustain the motion of Hydraulic and will amend the aforementioned portions of its November 29, 1973 memorandum.

■■■■ Streator moves for an order directing that, in the tri-partite or joint arbitration of the subject vacation pay

claims, the arbitrator shall "give full effect to" (a) the Streator collective bargaining agreement provision "that Streator will not be forced to recognize grievances involving any past practice of the defendant [Hydraulic] . . .," and (b) the provision of the Hydraulic-Streator sale agreement of January 19, 1972, "under which Hydraulic covenanted to hold Streator harmless from any claims by Hydraulic's employees for vacation pay due or alleged to be due at the Closing Date". The Court will deny the Streator motion regarding the aforementioned contractual provisions for two reasons. First, the Streator collective bargaining agreement has previously been placed in issue for the arbitrator's decision by the Court's memorandum of November 29, 1973, at p. 17 (arbitration issue (2)). The Court will not bind the arbitrator by requiring that the aforementioned provision, (a) above, be given "full effect". Second, the Court has previously ruled that the "hold harmless" provision in the sale contract is a matter to be separately litigated after the arbitrator has decided the parties' rights under the arbitration provisions of the labor agreements. The Court will not alter that ruling.

Streator further moves the Court to direct that, "if the arbitrator should award monetary compensation to any employees, such award should be directed and limited to defendant Hydraulic and should not have the effect of imposing monetary liability against defendant Streator". The Court will not so limit the authority of the arbitrator in fashioning an award deemed by him to be proper under the terms of the subject arbitration clauses.

Streator further moves for an order (1) that the arbitrator equitably allocate between the two defendants any vacation pay the arbitrator finds to be due and owing, and (2) that the arbitrator consider the effect, on the liability of the parties, of the amount of subject vacation pay already paid by Streator. The Court will sustain that portion of the instant motion enumerated (2), im-mediately above, and deny the other portion enumerated (1).

In consequence,

It is hereby ordered that the third sentence found in Undisputed Fact No. 14, on page 6 of the Court's November 29, 1973 memorandum is amended to read as follows: "Streator refused, and continues to refuse, to pay the employees the full 1972 vacation pay entitlement claimed by the employees.";

It is further ordered that Undisputed Fact No. 15, on page 7 of the Court's November 29, 1973 memorandum is amended to read as follows: "Hydraulic has refused to pay its former employees any vacation pay at all, claimed by the employees to be due in 1972, based upon the employees' employment with Hydraulic prior to the date it sold the plant to Streator.";

It is further ordered that the issues formulated by the Court for submission to the arbitrator (paragraphs V.(1) and (2) on page 17 of the Court's November 29, 1973 memorandum) shall be amended to read as follows:

"(1) whether Hydraulic Press Brick Company is liable under the terms of its collective bargaining agreement with Local No. 552, executed on May 1, 1969, for the vacation pay to which the employees of the Local No. 552 bargaining unit at the subject plant were entitled in 1972 (if the arbitrator decides that such entitlement exists) and which vacation pay is as yet unpaid; and

"(2) whether Streator Brick Systems, Inc. is liable for the vacation pay to which the employees of the Local No. 552 bargaining unit at the subject plant were entitled in 1972 (if the arbitrator decides that such entitlement exists) and which vacation pay is as yet unpaid, under the terms of either the collective bargaining agreement executed by Local No. 552 and Hydraulic on May 1, 1969, or the collective bargaining agreement executed by Local No. 552 and Streator Brick Systems, Inc. on January 3, 1972."

It is further ordered that the following paragraph shall be inserted on page 17 of the Court's November 29, 1973 memorandum, immediately prior to the last line on said page:

"The Court is of the opinion that, in reaching any decision on the issues presented, the arbitrator should consider the amount of the subject vacation pay already paid by Streator, upon the proof of such payment adduced before the arbitrator."

It is further ordered that in all other respects the instant motions be and are denied.