**REID BURTON CONSTRUCTION, INC.,**
a Colorado Corporation,
Plaintiff-Appellant,

v.

**CARPENTERS DISTRICT COUNCIL OF SOUTHERN COLORADO et al.,**
Defendants-Appellees.

No. 75–1149.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 12, 1975.

Decided May 6, 1976.

Robert G. Good, Denver, Colo., for plaintiff-appellant.

John W. McKendree, Denver, Colo., for defendants-appellees.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

LEWIS, Chief Judge.

Two clearly drawn but different issues are involved in this appeal: (1) Whether Reid Burton Construction's claim for damages arising out of the unions' alleged violation of the no-strike clause was arbitrable, and if so, (2) whether the unions, because of certain pleading and procedural tactics employed by them in the district court, were prevented by the equitable doctrines of waiver, estoppel, repudiation, or laches from asserting the arbitrability of Burton Construction's complaint. Finding both of these issues arbitrable, the district court dismissed the present action.

Since this appeal is not concerned with the merits of the underlying damage claim, we need only outline those facts which led to the filing of this action. Burton Construction, a signatory to a collective bargaining agreement with the Carpenters District Council of Southern Colorado and its affiliated local unions of the United Brotherhood of Carpenters and Joiners of America, AFL–CIO, was approached by the Colorado Building and Construction Trades Council to sign an agreement whereby it would only subcontract with other employ-

ers who were in contractual relationship to labor organizations affiliated with the Building Trades Council. Burton Construction refused to sign the agreement and the Building Trades Council picketed several of Burton Construction's building sites during parts of March and April of 1973.

In spite of a no-strike clause in the collective bargaining agreement, union carpenters refused to cross the picket lines. As a result, on July 13, 1973, Burton Construction filed this damage claim in district court against the Colorado Building and Construction Trades Council, the Carpenters District Council of Southern Colorado, and Local 1340 of the United Brotherhood of Carpenters and Joiners. All three of the defendants made motions to be dismissed from the lawsuit. The court did dismiss the Building Trades Council, but denied the similar motions of the District Council and Local 1340.

In their answers filed on November 9, 1973, the District Council and Local 1340 admitted jurisdiction under section 301 of the National Labor Relations Act as to the District Council, but asserted that "Local 1340 is not a party to the aforementioned collective bargaining agreement." Also in their answer, as an affirmative defense the District Council and Local 1340 alleged:

> This Court has no jurisdiction over the subject matter of this action because it involves the interpretation and application of the collective bargaining agreement . . . which is within the sole and exclusive province of the dispute resolution machinery contained therein which provisions contain the exclusive remedy for breaches thereof.

The unions also counterclaimed against Burton Construction, alleging that it had breached the collective bargaining agreement by filing this action for failure to have first used the grievance and arbitration procedures contained in the agreement for processing disputes. In Burton Construction's answer to the counterclaim, it contended that the unions had waived their right to arbitration and that the counterclaim was barred because of laches.

More than a year after the complaint was filed, the unions admitted that while they did not consider Local 1340 to be a "party" to the collective bargaining agreement, they did consider it to be "bound by the substantive terms of the agreement." The case proceeded to a trial on October 1, 1974, wherein the trial court determined that both the alleged violation of the no-strike clause and the issue of whether estoppel, waiver, repudiation, or laches should prevent the unions from demanding arbitration were arbitrable issues. The trial court based the latter determination on its reading of *Operating Engineers Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248. The trial court initially intended to order a stay pending the arbitration of these two issues, but noted that if Burton Construction would prefer, the court would dismiss the action in order to perfect the appellate record. Burton Construction opted for the latter and this appeal followed.

## I.

The first issue of whether Burton Construction's damage claim for alleged breach of a no-strike clause was an arbitrable issue must be decided by a careful analysis of *Drake Bakeries, Inc. v. Local 50, Bakery Workers*, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474, and *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462. Both of these cases, which were decided the same day, were damage actions brought by employers against the unions for violations of no-strike or work stoppage provisions in the respective collective bargaining agreements. In each case the unions argued that the issues were arbitrable and that the courts should stay the actions pending arbitration. Basing its opinion on the intended scope and effect of each collective bargaining agreement, the Court reached different results.

The fact that the Supreme Court reached different conclusions in *Atkinson* and *Drake Bakeries* is consistent with its earlier observation in *Warrior & Gulf Navigation* where it stated that "arbitration is a matter of contract and a party cannot be required to

submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417. Our first question therefore is one of contractual interpretation—whether a violation of the no-strike clause was intended by Burton Construction and the unions to be subject to Article XIII, the grievance and arbitration provisions of the collective bargaining agreement.

Neither *Drake Bakeries* nor *Atkinson* definitively answers our question, since the language of Article XIII falls somewhere in between the pertinent grievance and arbitration provisions in those cases. In *Atkinson*, the Court found it persuasive that the grievance and arbitration clause applied only to employee-initiated grievances and was not intended to include "all of their possible disputes."[1] The applicable griev-

ance provision in *Drake Bakeries*, however, was much more broadly written—it was to include "all complaints, disputes or grievances arising between [the parties]"—and clearly indicated that either labor or management could process a grievance.[2] The standard of analysis used by the Court apparently fixes on two factors: (1) Whether the grievance and arbitration provisions were wholly employee and union initiated or could be initiated by either the employees or the employer, and (2) whether disputes over the violation of no-strike clauses were intended by the parties to be subject to grievance and arbitration procedures.

Each of the cases that has ruled that a violation of a no-strike clause is not subject to arbitration has done so when the grievance and arbitration provisions were wholly employee and union initiated.[3] Burton Construction contends that Article XIII is

---

1. The procedure for filing a grievance under the collective bargaining agreement in *Atkinson* clearly applied only to the employee- and/or union-initiated grievances:

    It is the sincere desire of both parties that *employee grievances* be settled as fairly and as quickly as possible. Therefore, when a grievance arises, the following procedure must be followed:
    2. For the purpose of adjusting *employee grievances and disputes* as defined above, it is agreed that *any employee, individually or accompanied by his committeeman*, if desired shall:
    (a) Seek direct adjustment of any grievance or dispute with the foreman under whom he is employed
        .    .    .    .    .
    (b) If the question is not then settled, the employee may submit his grievance in writing, on forms supplied by Union   .   .   . .
    *Quoted in Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 250, 82 S.Ct. 1318, 1325, 8 L.Ed.2d 462, 471 (emphasis added).

2. Unlike the language in *Atkinson*, the grievance procedure in *Drake Bakeries* unequivocally was designed to allow either the employee or the employer to initiate grievance procedures:
    (a) The parties agree that they will promptly attempt to adjust all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties hereto, directly or indirectly.

    In the *adjustment of such matters the Union shall be represented in the first instance by the duly designated committee and the Shop Chairman and the Employer shall be represented by the Shop Management.* It is agreed that in the handling of grievances there shall be no interference with the conduct of the business.
    (b) If the Committee and the Shop Management are unable to effect an adjustment, then the *issue involved shall be submitted in writing by the party claiming to be aggrieved to the other party.* The matter shall then be taken up for adjustment between the Union and the Plant Manager or other representative designated by management for the purpose. If no mutually satisfactory adjustment is reached by this means, or in any event within seven (7) days after the submission of the issue in writing as provided above, *then either party shall have the right to refer the matter to arbitration as herein provided.*
    *Quoted in Drake Bakeries Inc. v. Local 50, Bakery Workers*, 370 U.S. 254, 257 n.2, 82 S.Ct. 1346, 1348, 8 L.Ed.2d 474, 477 (emphasis added.)

3. *See, e. g., Friedrich v. Local 780, IUE*, 5 Cir., 515 F.2d 225; *Faultless Division v. Local 2040, I.M. & A.W.*, 7 Cir., 513 F.2d 987, 990; *Affiliated Food Distributors, Inc. v. Local 229, Teamsters*, 3 Cir., 483 F.2d 418, cert. denied, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470; *Firestone Tire & Rubber Co. v. Rubber Workers Union*, 5 Cir., 476 F.2d 603, 605–06; *G. T. Schjeldahl Co. v. Local 1680, Machinists*, 1 Cir., 393 F.2d 502; *Boeing Co. v. UAW Local 1069*, 3 Cir., 370 F.2d 969.

wholly employee initiated, citing the following language:

> In the event that a dispute arises involving the application or interpretation of the terms of this agreement, reasonable and diligent effort shall be exerted by the employee with the employer's representative, the employee contacting the business representative through the steward, and/or the business representative with the employer's representative[.]

We find this language ambiguous as to whether an employer can initiate a grievance, but in the context of the sentence immediately following the quoted language, it becomes apparent that the parties intended that either party could process a grievance:

> If the two parties are unable to reach a settlement, the dispute shall be reduced to writing and *the aggrieved party* shall notify *the other party* the dispute is being referred to a Board of Adjustment.

(Emphasis added.) Reference to the parties as "the aggrieved party" and "the other party" is, as was the case in *Drake Bakeries*, indicative that under the agreement either party could initiate the grievance procedure.

■ The second prong of the *Atkinson-Drake Bakeries* analysis is one of contractual interpretation—whether the language of Article XIII is broad enough to include alleged violations of the no-strike clause. Article XIII provisions were intended to cover any "dispute . . . involving the application or interpretation of the terms of th[e] agreement." This language is much more analogous to the language in *Drake Bakeries*, which the Court determined was broad enough to cover a violation of a no-strike clause, than to the corresponding provision in *Atkinson*.[4] The similarity between Article XIII and the language in *Drake Bakeries* together with the *Warrior & Gulf* presumption of arbitrability—that disputes

should be arbitrated "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"—convinces us that the district court correctly concluded that under this collective bargaining agreement, the alleged violation of the no-strike clause was an arbitrable issue.

## II.

■ In its trial memorandum, Burton Construction raised the issue of whether the unions were estopped from claiming any right of arbitration on the basis of certain equitable principles (*e. g.*, repudiation, laches, waiver) because of their dilatory pleading practices before the district court. Before confronting this issue, however, the district court had to determine whether judicial proceedings or arbitration was the proper forum for determining the merits of the equitable defenses raised by Burton Construction. Reluctantly, the district court answered that equitable defenses should also be decided by arbitration as mandated by *Operating Engineers Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248. We cannot agree with the district court's conclusion that in every instance where the parties of a section 301 action are bound by a collective bargaining agreement *Flair Builders* requires questions of waiver, repudiation, estoppel, laches or other equitable defenses to be determined by an arbitrator. We deem this broad conclusion to be subject to an important limitation.

The issue in *Flair Builders* was whether a party to a collective bargaining agreement may be so dilatory in making the existence of a "vaguely delineated dispute" known to the other party that a court is justified in refusing to compel the submission of an otherwise arbitrable issue to an arbitrator. The Supreme Court did not directly answer this question, but instead ruled that the arbitration clause in that case was so broad-

---

4. The parties in *Drake Bakeries* had agreed to attempt adjustment of "all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by" the agree- ment, whereas in *Atkinson*, the grievance procedure only applied to "any difference regarding wages, hours or working conditions . . . ."

ly worded as to include also the arbitration of the laches issue. The Court, noting that its decision did not excuse a judicial examination of the scope of an arbitration clause as to whether equitable defenses should be decided by the arbitrator or the court, concluded that

> once a court finds that, as here, the parties are subject to an agreement to arbitrate, and that agreement extends to "any difference" between them, then a claim that particular grievances are barred by laches is an arbitrable question under the agreement.

*Operating Engineers Local 150 v. Flair Builders, Inc.,* 406 U.S. 487, 491–92, 92 S.Ct. 1710, 1713, 32 L.Ed.2d 248, 252. Thus, *Flair Builders* did not determine that every equitable defense was an arbitrable issue, but that its arbitrability hinged upon the scope of the arbitration clause.

■ The equitable defense in the instant case arose from alleged "evasive" and "dilatory" pleading tactics by the unions in the district court proceedings, specifically the fact that the unions claimed that Local 1340 was not a party to the collective bargaining agreement, later admitting that while Local 1340 was not a party it was still bound by the provisions of the agreement. Courts must, of course, maintain judicial control of their own proceedings. Such power, we assert, is broad enough to include a court's determination of the validity of equitable defenses arising out of the action of parties before the court. To hold otherwise would unnecessarily hamper a court's control of its proceedings.

We do not read *Flair Builders* nor its progeny as requiring a district court to flatly forego the exercise of its traditional powers in favor of arbitration in determining the merits of alleged equitable defenses. After analyzing and reviewing *Flair Builders* and the subsequent cases citing it, we conclude that *Flair Builders* can be confined to the proposition that certain broadly-worded arbitration clauses require the arbitration of equitable defenses arising out of the formation of a collective bargaining agreement or the processing of a grievance,[5] be they intrinsic procedural questions or extrinsic questions as defined by *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898.[6] This is not an unduly narrow reading of *Flair Builders.* Surely, no one would contend that an express waiver of a party's right to demand arbitration during the course of a case in district court would not be adequate legal grounds for the district court to proceed to the merits of an otherwise arbitrable dispute without requiring arbitration.

■ The test employed by the Supreme Court in *Flair Builders* to determine the arbitrability of the laches issue was whether the parties had, by the language of the collective bargaining agreement, intended that such a dispute be arbitrable. Following this test, we must determine whether Burton Construction and the unions agreed

5. *See, e.g., H & M Cake Box, Inc. v. Bakery Workers Local 45,* 1 Cir., 493 F.2d 1226, *cert. denied,* 419 U.S. 839, 95 S.Ct. 68, 42 L.Ed.2d 66; *General Dynamics Corp. v. Local 5, Marine and Shipbuilding Workers,* 1 Cir., 469 F.2d 848; *Operating Engineers Local 139 v. Carl A. Morse, Inc.,* E.D.Wis., 387 F.Supp. 153; *Local 552, Brick and Clay Workers v. Hydraulic Press Brick Co.,* S.D.Mo., 371 F.Supp. 818. *But see Ladies' Garment Workers' Union v. Ashland Industries, Inc.,* 5 Cir., 488 F.2d 641, *cert. denied,* 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68.

6. Two cases citing *Flair Builders,* however, have called for the arbitration of equitable defenses not arising out of the processing of a grievance or the formation of a collective bargaining agreement. *Controlled Sanitation Corp. v. District 28, I.M. & A.W.,* 3 Cir., 524 F.2d 1324, *cert.*

*denied,* 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319, 44 U.S.L.W. 3471; *Local 542, Operating Engineers v. Penn State Construction, Inc.,* M.D.Pa., 356 F.Supp. 512. In each of these section 301 actions, the defendants alleged arbitrability of the underlying dispute. Because of certain pleading delays on the part of the defendants, the plaintiffs in each case countered the arbitrability claim, asserting that the defendants had waived or repudiated their right to arbitrate the dispute. As was the case with the district court in this instance, the courts held that *Flair Builders* mandated the arbitration of the waiver and repudiation defenses, but neither court focused on what we have determined to be a crucial distinction—a court's inherent and unrestricted power to control the judicial functions.

to arbitrate any questions of equitable defenses arising out of misconduct in court cases in which the two were parties. As discussed earlier, the language of Article XIII was broad enough to include disputes dealing with violations of the no-strike provision and would probably cover the type of laches defense raised in *Flair Builders*, but we do not believe that the parties ever intended to include the arbitration of equitable defenses arising out of actions by a party in proceedings before a district court. Indeed, even had the parties so intended, we would conclude that such an agreement would clearly exceed the proper subject matter of a collective bargaining agreement and would not be enforceable in court; it would be improper for the prospective parties of a lawsuit to attempt by contract to bind the exercise of a court's inherent judicial function.

■ Allowing federal courts to retain jurisdiction under section 301 of the National Labor Relations Act of an otherwise arbitrable dispute because of certain misconduct of one of the parties in the judicial proceedings themselves which gives rise to some type of estoppel to claim arbitrability is not inconsistent with the strong national labor policy favoring arbitration of labor disputes. AS noted earlier, this policy is partly premised on the understanding that

arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. . . . An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417. If it can be concluded with "positive assurance" that the parties did not intend to arbitrate certain disputes, the policy favoring arbitration does not come into play. As discussed above, the parties in this case neither intended nor had the power to require arbitration of certain equitable defenses that have traditionally been decided exclusively by the courts.

■ In conclusion, therefore, we hold that the trial court erred in ruling that it was "bound" by *Flair Builders* to submit to arbitration the question of whether the unions should be prevented from demanding arbitration because of "evasive" and "dilatory" pleading practices before the court. It is entirely appropriate in some instances for a district court to retain section 301 jurisdiction of an arbitrable dispute where, because of conduct before the court, it may be deemed that a party is prevented on the basis of some equitable principle from asserting a right to arbitration. Whether the instant case is one such instance has not been decided. Therefore, we remand this case for such a determination. If the district court finds that there has been no estoppel or waiver because of the unions' conduct in pleading, then it is proper to order arbitration of the underlying dispute—the alleged violation of the no-strike clause. If on the other hand it is determined that the unions have waived their right to arbitration, or in some other way should be prevented from asserting this right, because of conduct which falls within the control of the court, then the district court can properly proceed to the merits of the underlying dispute.

■ In sum we conclude that the enumerated equitable defenses discussed are, in general, mandated by *Flair Builders* to the arbitrator for determination of the continued vitality of the contractual arbitration process. However, if such defenses arise solely during the course of the judicial process the arbitrator is not the one to determine whether the judicial process has been abused by either party or at all or whether an equitable defense to the main dispute has been established during the course of the judicial trial by in-trial conduct.

Remanded.