**UNITED STEELWORKERS OF AMERICA, Plaintiff,**

v.

**CRANE CO. and Pentex Foundry Corporation, Defendants.**

**Civ. A. No. 77–313.**

United States District Court, W. D. Pennsylvania.

Aug. 30, 1978.

A. E. Lawson, Pittsburgh, Pa., for plaintiff.

Louis Emanuel, III, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, William H. Powderly, III, Hollis T. Hurd, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

TEITELBAUM, District Judge.

In the motion presently before this Court the plaintiff, United Steelworkers of America (hereinafter "Union") has requested a grant of summary judgment to compel tripartite arbitration and an order directing

the defendants to make immediate payment of all pension benefits due as set forth in plaintiff's complaint. Defendant Pentex Foundry Corporation (hereinafter "Pentex") has also moved for summary judgment to compel arbitration. However, they contend that tripartite arbitration is inappropriate and request an order for arbitration between themselves and the Union. Defendant Crane Company (hereinafter "Crane") contests both motions and requests this Court hear and decide the dispute on the merits.

## UNDISPUTED FACTS

Until August 14, 1974 Crane owned and operated a certain manufacturing plant in New Castle, Pennsylvania. On or about that date Crane sold the facility to Texas International Company whose wholly-owned subsidiary Pentex has since been in charge of the plant's operation. Pentex signed collective bargaining and pension agreements with the Union substantially similar to the ones between Crane and the Union and the parties also signed agreements apportioning pension liability between Crane and Pentex.

While Crane owned the New Castle facility it employed Messrs. Robert Stitt and Arlen Palumbo. After the sale Messrs. Stitt and Palumbo continued working at the plant under the employ of Pentex until each became disabled. There is no dispute that these employees are disabled or that they are entitled to lifetime pensions. Further, there is no dispute as to the pension benefits accrued both before and after the sale or that Pentex has paid the accrued benefits after sale. What is in dispute is the right to pay only the reduced actuarial equivalent of the benefits accrued before sale. The Union contends that Crane or Pentex must pay the full amount. Crane contends that if Messrs. Stitt and Palumbo are in fact entitled to full benefits that payment is the responsibility of Pentex. Pentex contends that they have no liability because the dispute is over pre-sale pension benefits.

That is the dispute on the merits of this case. However, it is not the issue presently before this Court. The issue now before this Court concerns compelling arbitration.

## ARBITRATION BETWEEN CRANE AND THE UNION

The original pension agreement between Crane and the Union contained a broad arbitration clause, requiring disputes over pension payments to go to arbitration and not to the courts. Crane, however, contends that this agreement is no longer controlling because of a subsequent agreement entered into between Crane and the Union in September of 1974. Paragraphs one and two of that agreement deal with pension rights. They state:

1. ". . . *All employees who accept employment by Pentex will have no rights to any pension, sub, insurance or other benefits from Crane except as specifically set forth herein.*

2. *"Employees hired at New Castle by Pentex shall have their eligibility for pensions determined by the total of their continuous service with Crane Company and Pentex, and shall receive pension benefits from Crane as provided in item 14 of the Memorandum of Agreement entered into between Pentex and USW, which describes the separate obligations of Crane and Pentex and Crane accepts its obligations as described thereunder."*

The agreement contains no provision for arbitration.

The duty to arbitrate a dispute is a contractual duty and not one that can be forced on a party in absence of a contractual arbitration provision. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409. However, it is also clear that arbitration can be ordered when the contract requiring such a remedy has expired and a dispute arises under the terms of the expired contract. *Nolde Bros. Inc. v. Bakery Workers*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977); *John Wiley & Sons, Inc.*

v. David Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

Crane contends that while *Nolde* is unquestionably valid law it is not applicable to the factual situation here. This is based on Crane's reading of the September 19th agreement as cutting off any rights granted in prior contracts and substituting the rights granted in that agreement. If Crane were correct in its interpretation, this Court would have to refuse the arbitration demand because there would be no binding contractual arbitration provision. However, it is not the view of this Court that the 1974 agreement supplants all previous contractual rights and duties of the parties.

■ In the first paragraph of the 1974 agreement it states that employees will have *"no rights to any pension . . . benefits from Crane except as specifically set forth"* in that agreement. Then the second paragraph goes on to talk about *"eligibility for pensions."* Nowhere in the agreement does it actually discuss amounts to be paid to pensioners or the specifics of the plan. Rather, it talks only of who is eligible. Eligibility though is not in dispute in this case. The dispute is the amount due Messrs. Stitt and Palumbo.

If the 1974 agreement was left to stand alone as the sole enforceable agreement between Crane and the Union it would be impossible to enforce as to pension benefits because it sets forth no amounts or time sequence for payment. For these specifics we must look to the original pension agreement which contains an arbitration clause. Thus, since the amount due is the matter in controversy, not eligibility, the original pension agreement must be the basis for any grant of relief and its agreement to arbitrate any disputes arising must control.

## TRIPARTITE ARBITRATION

Pentex has agreed, and even requested, that any dispute between it and the Union be sent to arbitration. Pentex's sole dispute with the Union at this stage of the proceeding concerns the request for tripartite arbitration, which Pentex opposes.

Tripartite arbitration, although infrequently used, has much to recommend it when used in the proper circumstances. As stated in *Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Association*, 293 F.Supp. 1400 at 1403 (S.D.N.Y.1968):

> *"Compelling all three parties to the dispute to submit their grievances to the same arbitration is practicable, economical and convenient for the parties and the arbitrator. It is sound because it not only avoids duplication of effort but the possibility of conflicting awards."*

Because of its advantages tripartite arbitration has been used where two unions each claim a certain job must be filled by one of its members, *Columbia Broadcasting, supra,* aff'd 414 F.2d 1326 (2 Cir. 1969) and in a case where the Union claimed that successor employers must grant vacation pay, *Local No. 552 United Brick and Clay Workers of America, AFL–CIO v. Hydraulic Press Brick Co.,* 371 F.Supp. 818 (S.D.Mo. 1974). Also, the United States Court of Appeals for the Third Circuit has shown approval of tripartite arbitration, albeit in dictum, in *Window Glass Cutters League v. American St. Gobain Corp.,* 428 F.2d 353 (3d Cir. 1970).

*Hydraulic Press* is a case particularly relevant to the dispute presently facing this Court. There a union sued predecessor and successor employers over a vacation pay dispute. The union claimed that the successor employer was required to pay the full vacation pay amount due (it had only paid a percentage of what was due) or in the alternative that the predecessor employer must make up the difference between the reduced amount paid and the full amount. The District Court ordered tripartite arbitration citing the advantages of it set forth in *Columbia Broadcasting.*

Pentex argues that *Hydraulic Press* should be distinguished because the contracts between the Union and the predecessor and successor employers in that case did not adequately apportion payment of vacation pay and thus a real dispute as to who was liable existed. Pentex claims that be-

cause the contracts between Crane, Pentex and the Union specifically do apportion pension benefits and show that Pentex has no liability to the Union for benefits accruing prior to sale, no issue as to their liability for these benefits exists. Thus, the argument goes, the controversy as to pre-sale benefits is solely between Crane and the Union and any liability of Pentex for those benefits stems only from a contract between Crane and Pentex for indemnification, a contract which does not provide for arbitration.

■ Pentex is correct in stating that they cannot be drawn into arbitration between Crane and the Union solely on the basis of their indemnification contract with Crane. As the Court held in *Hydraulic Press, supra,* at 827:

> "The effect of the 'hold harmless' provision in the sale contract is a matter to be separately litigated after the arbitrator has decided the parties' rights under the arbitration provisions of the labor agreements."

However, Pentex is incorrect in assuming that that is the only basis on which they might be drawn into arbitration over pre-sale benefits.

■ The flaw in Pentex's argument is the assumption that the agreement between Pentex and the Union eliminates any controversy over apportioning pension liabilities between Crane and Pentex. While at some point in time the agreement might have adequately apportioned liability it no longer does. This is due to the passage of the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. § 1001 et seq. and its liberalization of vesting rules for pension plans. It is the contention of this Union that ERISA requires Messrs. Stitt and Palumbo to be paid the entire amount of their presale accrued pensions, not an actuarially reduced amount. However, Crane and Pentex each claim the other is liable for the increased benefits. To determine which, if either, party is liable for the excess amount, a court or arbitration must apply ERISA to the individual pension agreements, since the pension agreements provide for arbitration of disputes. An arbitrator and not the Court must do this.

What has developed then is a situation similar to that in *Hydraulic Press,* the contracts between the parties do not adequately set out who may be liable for the non-actuarially reduced portion of the presale pension benefits. In a situation such as this tripartite arbitration is a desirable procedure. The issues between the parties are the same and the dispute arises out of the same set of facts. Further, tripartite arbitration will eliminate the chance of inconsistent arbitration awards, save the expense of additional arbitration fees, avoid duplication of effort and not result in prejudice to any party. For these reasons this Court is of the opinion that it is appropriate for all three parties in this dispute to arbitrate their grievances in one proceeding.

## IMMEDIATE PAYMENT OF PENSIONS

■ It is the opinion of this Court that the immediate payment of full pension benefits is unwarranted under the circumstances present in this case. While it is within the Court's power to order such action that power is best used sparingly. Relief such as this should be restricted to cases where the plaintiff has a strong likelihood of prevailing on the merits and where nonpayment will cause irreparable harm.

■ It has not been shown that Messrs. Stitt and Palumbo are suffering any irreparable harm. They have been paid a pension from Pentex and are currently receiving payments from Crane. Thus, it is not a situation where no funds at all are going to the parties. Under circumstances such as these, it is best that any monetary award given to the parties await the forthcoming decision of the arbitrator.