**McNALLY PITTSBURG, INC., Plaintiff,**

v.

**UTAH BUILDING & CONSTRUCTION TRADES COUNCIL, AFL–CIO; Building & Construction Trades Department, AFL–CIO; International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO; Iron Workers Union, Local 27; United Brotherhood of Carpenters and Joiners of America, AFL–CIO; Millrights Local 728; Carpenters, Local 1498, Defendants.**

Civ. No. C–83–0842W.

United States District Court,
D. Utah, C.D.

April 19, 1984.

Eric C. Schweitzer, Olgetree, Deakins, Nash, Smoak & Stewart, Greenville, S.C., William B. Bohling, Brian W. Steffensen, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, for plaintiff.

Arthur F. Sandack, Sandack & Sandack, Stephen W. Cook, Salt Lake City, Utah, Richard M. Resnick, Sherman, Dunn, Cohen, Leifer & Counts, Washington, D.C., for Utah Bldg. & Const. Trades Council/AFL–CIO, Steve Richins and Dennis L. Abernethy.

Victor J. Van Bourg, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for all other defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

On April 16, 1984 the court heard oral argument on McNally Pittsburgh's (the plaintiff) motion for summary judgment and the defendants'[1] motion to compel arbitration. The plaintiff was represented by Peter G. Nash and Brian W. Steffensen. The defendants were represented by Victor J. Van Bourg and Stephen W. Cook. Prior to the hearing, the court read the memoranda filed by the parties, the exhibits thereto and various of the authorities cited therein. Being now fully advised, the court renders this memorandum decision and order.

Based on the record before the court, the undisputed facts of this matter are as follows. The plaintiff signed a prime contract to build coal processing equipment for the Intermountain Power Agency (IPA) at the Intermountain Power Project (IPP) located in Delta, Utah. The defendants are unions whose members are skilled in various construction trades. In order to establish "conditions for the efficient construction" of IPP and to "maintain harmonious relations between all parties to the agreement, to secure optimum productivity, and to eliminate strikes, lockouts, or delays in the work," Intermountain Power Project Stabilization Agreement, art. I, (hereinafter cited as Stabilization Agreement), the Bechtel Power Corporation[2] (Bechtel) and the defendants entered into an agreement concerning the wages, hours, benefits and general working conditions applicable to IPP. In order to be awarded a contract to perform construction work at IPP, the contractor or subcontractor must sign the Stabilization Agreement. *Id.* art. III, § 1. The Stabilization Agreement, however also provides that it is not "intended to influence labor policies of any employer" who signs it. *Id.* art. I. Moreover, the liability of any employer and of the separate unions under the Stabilization Agreement is "several and not joint." *Id.* art. II, § 7. In addition to the Stabilization Agreement, Bechtel and the defendants negotiated another agreement, known as the Intermountain Power Memorandum of Understanding (the Memorandum of Understanding), which provides for the referral of union employees to contractors and subcontractors at IPP by the various signatory unions. Contractors and subcontractors are not obligated to sign the Memorandum of Understanding in order to be eligible to perform construction work at IPP. Thus, to participate in the IPP construction process, a contractor is obligated to sign an agreement establishing wages, benefits, hours and general working conditions at the project, but is not obligated to agree to hire union employees to perform the work for which the contractor received the contract.

On May 31, 1983, John Jeter, Industrial Relations Manager for McNally Pittsburg, signed two copies of the stabilization agreement and two copies of the Memorandum of Understanding. On June 14, 1983, Jeter received a call from project manager Ken Morrow indicating that the unions were requesting a pre-job conference because McNally had signed the Memorandum of Understanding. To correct what he claims to have been an inadvertent signing of that agreement, Jeter sent a telegram to Mr. Eddie Mayne,[3] president of the Utah Building & Construction Trades Council (the Council) and to Mr. Steve Richins, also of the Council, informing them that "McNally Pittsburg, Inc. hereby voids and rescinds

---

1. By stipulation of the parties, the complaint was dismissed with prejudice as to the Building & Construction Trades Department, AFL–CIO and the Utah Building & Construction Trades Council, AFL–CIO. Order (entered March 7, 1984); Stipulation (entered February 28, 1984). Consequently, as used in this decision, the de-fendants refers collectively to the remaining named defendants only.

2. Bechtel is the construction manager at IPP.

3. The telegram was addressed incorrectly to Eddie Payne.

the executed Memorandum of Understanding covering our work to be performed on the Intermountain Power Project—Delta, Utah." Complaint, Ex. 3, 4. Later that same day, Richins sent a telegram to William Carson of Bechtel in Delta, Utah indicating that the Memorandum of Understanding was protected by section 8(f) of the Labor Management Relations Act (LMRA) and offering to hold a pre-job meeting and to refer necessary journeymen, ironworkers and millrights for McNally's IPP work. Complaint, Ex. 5.

On June 22, 1983, Richins, Dennis Abernethy,[4] Andy Anderson[5] and Jack Sorensen,[6] informed Ron Weatherred[7] that the unions objected to McNally's failure to schedule a pre-job conference with the unions as required by the Memorandum of Understanding. The unions' representatives requested Weatherred's assistance in obtaining a meeting with McNally. Around noon of that day, the unions' representatives and Weatherred met with Neal Jerome[8] to discuss the unions' grievances. At that meeting, Jerome indicated that McNally had rescinded the Memorandum of Understanding. The union representatives stated that they believed that the meetings constituted step three of the grievance procedure established by the Memorandum of Understanding. Jerome apparently agreed with that statement, and the union representatives then indicated that they intended to proceed to step four of the grievance procedure because McNally persisted in its refusal to hold a pre-job meeting.

On June 23, 1983, Richins filed a grievance on behalf of the Council against McNally claiming that McNally had violated the Memorandum of Understanding by refusing to hold a pre-job conference with the unions. Plaintiff's Memorandum in Support of Summary Judgment, Ex. F. At the conclusion of the grievance, Richins

requested that step four of the grievance procedure be invoked. On June 28, 1983, McNally hired its first employees to perform work pursuant to its prime contract at IPP. On July 5, 1983, the complaint was filed in this matter and on August 2, 1983, counsel for McNally responded to the Council's grievance by letter to Bechtel's Weatherred.

The defendants seek to have the court order the parties to this lawsuit to submit "the dispute" between the parties to arbitration pursuant to the terms of the grievance procedure established by the Memorandum of Understanding. After reading the memoranda submitted by the parties on this matter, the court has concluded that although the parties agree that a dispute exists, they do not agree at all times as to what the dispute is. The court perceives two disputes between McNally and the defendants. First McNally asserts that it is not bound by the Memorandum of Understanding and the defendants contest that allegation. Second, the defendants contend that McNally has violated the Memorandum of Understanding by failing to hold a pre-job conference in compliance with the requirements of the Memorandum of Understanding. Obviously, whether McNally is obligated to attend a pre-job conference depends on whether it is bound by the terms of the Memorandum of Understanding.

McNally advances two arguments on behalf of its claim that it is not bound by the Memorandum of Understanding. First McNally asserts that a meeting of the minds was never reached because Jeter signed the Memorandum of Understanding inadvertently, believing he was signing two additional copies of the stabilization agreement not two copies of the Memorandum of Understanding. The defendants argue that the question whether Jeter's signing of the Memorandum of Understanding cre-

---

**4.** Business manager of the Ironworkers Local 27.

**5.** Representative of the Carpenters District Council.

**6.** Business agent of the Millrights Local 722.

**7.** Labor relations supervisor for Bechtel.

**8.** Project superintendent for McNally at IPP.

ated a binding contract must be submitted to arbitration. That argument is based on passages from several Supreme Court opinions which the defendants construe to say that common law principles are not applicable to collective bargaining agreements. From that premise, the defendants appear to conclude that McNally's argument is wholly without merit.

██ The court understands the passages cited by the defendants differently. Undeniably, the Supreme Court has indicated that in interpreting and applying collective bargaining agreements the common law of contracts is displaced by "the common law of a particular industry or of a particular plant." *United Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578–79, 80 S.Ct. 1347, 1350–51, 4 L.Ed.2d 1409 (1960). Nonetheless, the Supreme Court repeatedly has emphasized that the duties imposed by the collective bargaining agreement are created by a contractual relationship. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 582, 80 S.Ct. at 1353. By virtue of section 301 of the LMRA, Congress has invested the courts with the responsibility of determining whether a party has agreed to submit a certain dispute to arbitration. *Id.; Rochdale Village, Inc. v. Public Service Employees Union, Local 80*, 605 F.2d 1290, 1294 (D.C.Cir.1979). Consequently, "the duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot proceed a judicial determination that the collective bargaining agreement does in fact create such a duty." *John Wiley & Sons v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964).

██ The court's understanding of the Supreme Court cases cited above is that the court is obligated to determine whether a binding contract exists, which in this case entails consideration of McNally's inadvertence arguments. As the defendants note, the record presently contains significant issues of fact material to the question of Jeter's inadvertence. Until that issue is resolved, the court cannot determine whether McNally was bound by the terms of the Memorandum of Understanding. The motions to compel arbitration must be denied.

██ Resolution of McNally's motion for summary judgment requires consideration of McNally's second argument in support of its claim that it is not bound by the Memorandum of Understanding. McNally contends that even if Jeter's signing of the Memorandum of Understanding created a binding agreement between McNally and the defendants, McNally is no longer bound by that agreement because it was a voidable pre-hire agreement which was rescinded by McNally in its telegrams to Mayne and Richins. The defendants advance several arguments in opposition to that position. First, the defendants dispute McNally's characterization of the Memorandum of Understanding as a pre-hire agreement. The LMRA defines as unfair labor practices the interference of either an employer or a union with an employees exercise of the rights guaranteed by the act. 29 U.S.C. § 158(a), (b). Section 158(f), however, provides that

It shall not be an unfair labor practice ... for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members ... because ... (3) such agreement requires the employer to notify such labor organization of the opportunities for employment with such employer, or give such labor organization an opportunity to refer qualified applicants for such employment. ...

The Memorandum of Understanding fits squarely within the definition provided by section 158(f)(3). The court, therefore, concludes that the Memorandum of Understanding is a section 158(f) pre-hire agreement.

The defendants also contend that even if the Memorandum of Understanding is a pre-hire agreement, it merged with the Stabilization Agreement when both were signed by Jeter. The basis for that conclusion is that the Memorandum of Understanding contains a provision which makes reference to and incorporates provisions of the Stabilization Agreement. See, Memorandum of Understanding, "art. VII." Citing authorities which stated that when one documents makes reference to or incorporates the terms of another, the two documents must be read together, the defendants conclude that the Memorandum of Understanding and the Stabilization Agreement merged into a single document when Jeter signed both.

■ The court is not persuaded by the defendants' logic. It is true that when one document refers to another document both must be read to interpret properly the first document. That well recognized rule of construction, however, does not mean that the existence of a cross reference in a document causes that document to become merged with the document to which the referral is made. Moreover to adopt the defendants' conclusion in this case, the court would have to ignore the undisputed facts which unambiguously demonstrate that Bechtel, the defendants and McNally negotiated, perceived and intended the Stabilization Agreement and the Memorandum of Understanding to be two separate agreements. Thus, the court cannot conclude that the Stabilization Agreement and the Memorandum of Understanding merged when Jeter signed both documents.

The United States Supreme Court recently confirmed section 158(f) pre-hire agreements are voidable until the union obtains majority support in the relevant labor union. *Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 103 S.Ct. 1753, 1758, 75 L.Ed.2d 830 (1983); *NLRB v. Local Union 103, International Association of Bridge Workers (Higdon),* 434 U.S. 335, 345, 98 S.Ct. 651, 657, 54 L.Ed.2d 586 (1978). The record demonstrates that McNally did not hire any employees until June 28, 1983. At least until that day, the Memorandum of Understanding was voidable by McNally.

■ The defendants counter McNally's argument that it has effectively rescinded the Memorandum of Understanding by sending telegrams to Mayne and Richins by arguing that the question of whether the rescission was effective should be determined by an arbitrator, not by the court. As noted above, the duty of the court pursuant to section 301 is to determine whether an agreement to arbitrate exists as well as the scope of that agreement. *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). McNally contends that determining whether its attempt to rescind the Memorandum of Understanding was effective is encompassed within the court's duty to determine if a binding agreement exists.

At first glance this situation appears to create a chicken or the egg dilemma. That is, if the court does not compel arbitration to determine if the agreement remains binding after the purported rescission, but decides the issue itself and reaches the conclusion that the rescission was not effective, then should not the arbitration clause have controlled? Or, alternatively, if the court orders arbitration and the arbitrator finds that the rescission was effective, then was not the arbitrator without authority to decide the question? Indeed, the latter possibility compelled a California court to conclude that the repudiation defense was not subject to arbitration. *Northern California District Council of Laborers v. Robles Concrete Co.,* 149 Cal. App.3d 289, 196 Cal.Rptr. 776 (1983). This court, however, disagrees with the *Robles* court's analysis because it believes that the analysis set forth above is flawed. The error in the analysis is that it looks to the enforceability of the agreement after the purported rescission to determine whether the court or the arbitrator should decide whether the agreement remains enforceable. As such, the analysis creates a legal Gordian knot. The court believes that the proper analysis dictates that the court decide whether an enforceable agreement ex-

isted prior to the attempt to rescind and, if so, whether the scope of the agreement's arbitration clause is broad enough to require arbitration of a dispute concerning an attempt to rescind the agreement.

For the purpose of its motion for summary judgment, McNally has assumed that a binding agreement was created when Jeter signed the two copies of the Memorandum of Understanding. For the purposes of this analysis only, the court must conclude that a binding agreement existed prior to McNally's attempt to rescind the agreement. Consequently, the court must determine whether the scope of the Memorandum of Understanding's arbitration clause encompasses a dispute over the effect of an attempt to rescind the agreement.

In *Operating Engineers Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), the Supreme Court held that an arbitration clause that encompassed "any dispute" between the parties obligated the parties to submit the question of whether one party was guilty of laches to arbitration. *Id.* at 491–92, 92 S.Ct. at 1712–13. The Tenth Circuit has construed the *Flair Builders* test as requiring a court to determine "whether the parties had, by the language of the collective bargaining agreement, intended that such a dispute be arbitrable." *Reid Burton Construction, Inc. v. Carpenters District Council*, 535 F.2d 598, 603 (10th Cir. 1976). The Memorandum of Understanding provides that:

> In the event that any dispute arises out of the interpretation or application of the Agreement, exclusive of disputes arising out of illegal work stoppages in questions of jurisdiction of work, the following procedures shall be pursued as a means of solving the dispute: ....

Memorandum of Understanding, "Grievance Procedure and Arbitration". In *Flair Builders*, the arbitration clause referred to "any difference" and the Supreme Court concluded that it was broad enough to cover the question of laches on the part of the parties seeking to compel arbitration. 406 U.S. at 491. The court is persuaded that the question of whether an attempt to rescind the agreement by a party thereto is effective is a dispute which "arises out of the interpretation or application of the Agreement." Consequently, the court must conclude that if a binding agreement between the defendants and McNally was created when Jeter signed the Memorandum of Understanding, the question of whether McNally at a later time effectively rescinded the agreement must be decided by an arbitrator, not by the court. That conclusion dictates that McNally's motion for summary judgment be denied.[9]

Accordingly, IT IS HEREBY ORDERED:

1. That the defendants' motions to compel arbitration be denied.

2. That McNally's motion for summary judgment be denied.

3. That counsel for McNally prepare and submit a proposed order within twenty (20) days of notice of this decision.

---

**9.** For all purposes other than its motion for summary judgment McNally has reserved the question of whether Jeter's mistake precluded his signing of the Memorandum of Understanding from creating a binding agreement. As the defendants' counsel noted at oral argument, before the court can order arbitration of anything, it must conclude that a binding agreement existed. Until the issue of whether Jeter's signing of the Memorandum of Understanding created a binding agreement is resolved on the merits, the court cannot order McNally to arbitrate the rescission issue. Thus, the court's decision on McNally's motion for summary judgment does not necessitate the granting of the defendants' motions to compel arbitration.