**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIPBUILDERS, FORGERS AND BLACKSMITHS LOCAL LODGE NO. 582**

v.

**DELTA SOUTHERN COMPANY, INC.**

Civ. A. No. 84–146–B.

United States District Court, M.D. Louisiana.

Jan. 21, 1985.

Barker, Boudreaux, Lamy, Gardner & Foley, Louis L. Robein, New Orleans, La., for plaintiff.

Richard Marcus, Reuben R. Proctor, Chicago, Ill., Robert L. Roland, Watson, Blanche, Wilson & Posner, Baton Rouge, La., for defendant.

POLOZOLA, District Judge.

This matter is before the court on motion of the defendant, Delta Southern Company, Inc. (Delta Southern) for summary judgment. For reasons which follow, the court finds that defendant's motion for summary judgment should be denied because the court believes the parties are required to arbitrate the grievance which is the subject of this lawsuit. Because the plaintiff has not filed a motion for summary judgment, the court cannot order arbitration at this time. However, plaintiff may either file a motion for summary judgment on the same record, or the parties may submit a consent judgment requiring arbitration and reserving, if necessary, the defendant's right to appeal this court's decision.

The International Brotherhood of Boilermakers, Iron Shipbuilders, Forgers, and Blacksmiths Local Lodge No. 582 (Union) filed this suit to compel arbitration of the issue of whether Delta Southern, which has permanently ceased operations at its plant in Baton Rouge, must arbitrate whether the company's former employees are entitled to severance pay under the expired collective bargaining agreement. The facts of this case are not in dispute. Delta Southern operated a production facility in Baton Rouge until the latter part of 1983. Certain production and maintenance employees who worked at that facility were represented by the union. There were several collective bargaining agreements which were entered into by the parties, the last of which was executed in August of 1980. The 1980 agreement was later extended until August 21, 1983.

On December 17, 1982, Delta Southern notified the union that because of business losses, the company was permanently shutting down its Baton Rouge plant and that it expected to terminate all bargaining unit employees by the end of January 1983. On May 24, 1983, the union requested the company to bargain over the effects of the shutdown. The company met with the union on August 23, 1983 for a bargaining session, during which the company rejected the union's request for séverance pay. On the same day, counsel for the union advised the company that it was filing a grievance under the collective bargaining agreement as a result of the company's refusal to provide severance pay to bargaining unit employees. On September 3, 1983, the company rejected the union's grievance and request for arbitration under the agreement. The union then filed this suit to compel arbitration on February 7, 1984.

Delta Southern now seeks to have this suit dismissed by summary judgment. Delta Southern advances several arguments in support of its motion for summary judgment. It contends that: (1) the dispute is not arbitrable under the terms of the collective bargaining agreement; (2) there can be no arbitration after termination of the employment relation; (3) the collective bargaining agreement has expired, foreclosing arbitration; (4) the union failed to meet conditions precedent to arbitration under the agreement; (5) arbitration is barred by laches; and (6) there was no proper service of process made on it.

Delta Southern maintains that the dispute is not arbitrable because it is not a "grievance" as defined in the collective bargaining agreement. It contends that only grievances are arbitrable under the agreement. The bargaining agreement defines a grievance as follows:

Grievances are defined hereby to include only the discipline of employees and complaints involving the interpretation and

application of the express provisions of this contract.

The company argues that because there is no express provision in the agreement for severance pay for bargaining unit employees, this dispute is not a "grievance" under the agreement and, therefore, is not arbitrable.

The union has filed an opposition to Delta Southern's motion. The union claims that this dispute is a grievance as defined in the contract, because it does involve an "express provision of this contract". The union maintains that this dispute over severance pay falls under Article XVIII of the collective bargaining agreement which provides:

> There shall be no discrimination by the Company against ... any employee in regard to ... discharge [or] layoff ... on account of his Union or Nonunion Membership ...

The union claims that non-bargaining unit employees were given severance pay and that such a payment constitutes a violation of Article XVIII of the agreement, thus making this dispute arbitrable as it involves the interpretation and application of that express provision of the contract.

 Whether or not a party is bound to arbitrate and what issues it is bound to arbitrate is a matter to be determined by the courts on the basis of the contract entered into by the employer and the union. An employer has no duty to arbitrate issues which it has not agreed to arbitrate and cannot be compelled to arbitrate if the arbitration clause does not bind it to do so. *John Wiley and Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). *Atkinson v. Sinclair Refining Company*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), *International Union of Operating Engineers Local, 406 v. Altex Ready Mix Concrete Corp.*, 529 F.Supp. 479 (M.D.La.1982), aff'd., 683 F.2d 416 (5th Cir.1982). However, national labor policy favors arbitration of labor disputes. *United Steelworkers of America v. Warrior and Gulf Navigation Company*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Also, there is a presumption of arbitrability of disputes. *See Local Union No. 4–449, Oil, Chemical and Atomic Workers Union, AFL–CIO v. Amoco Chemical Corp.*, 589 F.2d 162 (5th Cir. 1979).

The court also finds the case of *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), particularly helpful and applicable under the facts of this case. The arbitration clause involved in the *United Steelworkers of America* case is very similar to the one in the instant case. It provided for arbitration of "[a]ny disputes, misunderstandings, differences or grievances arising between the parties as to the meaning, interpretation, and application of the provisions of this agreement...." *Id.* at 565, 80 S.Ct. at 1345. Relying on that clause, the union claimed that the company had violated a specific provision of the collective bargaining agreement. American Manufacturing claimed that it had not violated a specific provision of the agreement and, therefore, it could not be compelled to arbitrate. In holding that the dispute involved was arbitrable, the Supreme Court stated:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.

*Id.* at 567–68, 80 S.Ct. at 1346–47.

 After reviewing the contract in this case, the court finds that the arbitration clause therein covers the issue pending before the court. The issue and dispute involved in this case calls for the interpretation of the "Antidiscrimination Clause" of the contract in Article XVIII. As such, it falls under definition of "grievance" as defined in Article XX of the contract and must be decided by the arbitrator.

■ The company also argues that submission of the union's grievance to arbitration would inevitably result in judgment for the employer. A similar argument was rejected by the Supreme Court in *United Steelworkers of America v. American Manufacturing, supra,* wherein the court stated:

> The objection that equity will not order a party to do a useless act is outweighed by the catharic value of arbitrating even a frivolous grievance and by the dangers of excessive judicial intervention.

Id. at 568 n. 6, 80 S.Ct. at 1347 n. 6. *See also Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1,* 611 F.2d 580 (5th Cir.1980).

■ The company further contends that the union may not compel arbitration because the collective bargaining agreement has expired. Delta Southern contends that a party may not be compelled to arbitrate in the absence of a valid agreement to do so. In other words, Delta Southern argues that arbitration may not be ordered where the operative provisions of the collective bargaining agreement are no longer in effect. A similar argument was rejected by the Supreme Court in *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). The issue in *Nolde* was whether the employer was required to arbitrate a dispute over severance pay pursuant to the arbitration clause of a collective bargaining agreement, where the dispute arose after the termination of the contract. In *Nolde,* the court held that when the dispute is over an obligation arguably created by the expired agreement, it is subject to arbitration even if the dispute arose after termination of the agreement. *Id.* at 252, 97 S.Ct. at 1072. *See also John Wiley and Sons v. Livingston, supra.* Delta Southern attempts to distinguish this case by arguing that *Nolde* only held that the duty to arbitrate existed after expiration of the collective bargaining agreement *if* the matter was arbitrable prior to the expiration of the agreement. It argues that the dispute before this court

was not arbitrable prior to the expiration of the agreement. Because the court has found that this dispute was arbitrable under the agreement, there is no basis for the court to distinguish this case from *Nolde.* Delta Southern further attempts to distinguish *Nolde* on the basis that it involved a broadly worded grievance and arbitration clause, requiring a holding that even disputes which arose after expiration of the agreement were arbitrable. However, even if the arbitration clause in *Nolde* is broader than the one in the instant case, the court does not find that to be a valid basis to distinguish the two cases. There is no provision in the contract before the court which *excludes* claims arising after termination of the agreement from arbitration. The *Nolde* court indicated that failure to include such an exclusion supports the conclusion that the parties intended to arbitrate disputes arising after contract termination:

> [T]he parties failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship. In short, where the dispute is over provision of the expired agreement, the presumptions favoring arbitrability *must be negated expressly or by clear implication.*

*Nolde, supra* at 255, 97 S.Ct. at 1074 (emphasis added).

Therefore, the court finds that the fact that the collective bargaining agreement between the company and the union expired prior to the dispute involved herein does not affect the company's duty to arbitrate.

■ In a somewhat related argument to the above, Delta Southern also argues that under the agreement, only "employees" have standing to request arbitration, and the termination of the employer-employee relationship ended the employer's duty to arbitrate. The company contends

that because the union did not grieve the matter at issue until three months after the plant shut down, there were no more "employees" at the plant. Therefore, its duty to arbitrate ended. The court finds that this argument is without merit. The rationale in *Nolde* is equally applicable to this contention. While the dispute may not have arisen until after termination of the employment relationship, it clearly arose from the employment relationship. An obligation arguably created by that relationship is subject to arbitration. The presumption favoring arbitration requires a finding that the parties intended such disputes to be subject to arbitration.

■ The company also contends that the union failed to meet conditions precedent to arbitration required under the agreement. Because these conditions were not met, Delta Southern states that it has no duty to arbitrate this dispute. The Supreme Court dealt with this issue in the case of *John Wiley & Sons Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) wherein it stated:

> Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

*Id.* at 557, 84 S.Ct. at 918. The court has found that the subject matter of this dispute must be submitted to the arbitrator. Therefore, whether the conditions precedent to arbitration found in the agreement have been met is a question for the arbitrator.

Delta Southern contends that *John Wiley* indicated that decisions involving procedural issues should be made by the court, rather than the arbitrator, when failure to follow procedures in the contract would operate to "bar arbitration altogether" rather than merely "limit or qualify" the award. The court does not find support for that proposition in *John Wiley*. Defendant fails to recognize the importance of the phrase introducing the statement on which it attempts to rely to distinguish this case:

> *Even under a contrary rule*, a court could deny arbitration only if it could confidently be said not only that a claim was strictly "procedural", and therefore within the purview of the court, but also that it should operate to bar arbitration altogether, and not merely limit or qualify an arbitral award.

*Id.* at 557–558, 84 S.Ct. at 918–919 (emphasis added).

Delta Southern argues that the union's delay in seeking arbitration constituted laches barring enforcement of the contract. The company argues that the union was notified of the company's intent to shut down in December of 1982, and that all bargaining unit employees were terminated as of January 31, 1983. However, the union did not request bargaining over the effects of the shut down until May of 1983. The company states that when the union failed to obtain severance pay at the bargaining table, it made a "belated" decision to grieve the matter in August 1983. In short, the company, states that the union's knowledge of the alleged discrimination in May of 1983, but its failure to attempt to grieve the matter until August of 1983 constitutes laches.

■ In opposition, the union argues that the issues of laches is a question for the arbitrator and cites the case of *International Union of Operating Engineers, Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed. 248 (1972) in support of this proposition. The initial question for the court is whether the issue of laches is one for the court or whether it should be decided by the arbitrator. Unfortunately, *Flair* does not directly answer the question posed here. The court in *Flair* simply held that the parties in that case had *agreed* to arbitrate the issue of laches. *Id.* at 491, 92 S.Ct. at 1712. The arbitration clause in *Flair* provided for arbitration of "any difference" between the parties and no limitation was placed on this language. *Id.* The court in *Flair* specifically noted that it did not have to reach the

question of whether questions of "extrinsic" timeliness [1] are for the court or the arbitrator in the absence of an agreement. While *John Wiley* may have involved only "intrinsic" timeliness, many of the reasons for making such questions a matter for the arbitrator apply with equal force to an issue of extrinsic timeliness such as laches. For example, it would be difficult to consider the issue of laches "without consideration of the merits of the dispute". *John Wiley, supra,* 376 U.S., at 557, 84 S.Ct. at 918. Also, if the court did order arbitration, the arbitrator would often reconsider the same facts as the court in determining whether the grievance was timely under the contract. The result would be a needless duplication of effort. *Id.* at 558, 84 S.Ct. at 918. *See also Tobacco Workers International Union, Local 317 v. Lorillard Corporation,* 448 F.2d 949 (4th Cir. 1971). In this case, it would seem necessary for the arbitrator to determine when the union became aware that the non-unit employees received severance pay and its reasons for any delay in filing a grievance to determine whether the grievance was timely under the contract. Much the same inquiry would be necessary to determine whether the doctrine of laches applies to these facts. Finally, requiring a court to decide the issue of laches before a dispute is committed to arbitration would lead to additional delays which the arbitral process is designed to avoid. *John Wiley, supra,* 376 U.S., at 558, 84 S.Ct. at 918. Delta Southern relies on the case of *Reid Burton Construction, Inc. v. Carpenter's District Council of Southern Colorado,* 535 F.2d 598 (10th Cir.1976), *cert. denied,* 429 U.S. 907, 97 S.Ct. 272, 50 L.Ed.2d 188 (1976) in support of its proposition that the issue of laches is for the court rather than the arbitrator. However, the court does not find that case to be applicable here. In *Reid Burton* the court held that an equitable defense that a party had practiced "evasive" and "dilatory" pleading practices be-

fore the court was for the court to decide. The court in that case limited its holding to a defense "aris[ing] *solely during the course of the judicial process* [involving] whether the *judicial process* has been abused by either party or at all or whether an equitable defense to the main dispute has been established during the course of the judicial trial by *in-trial* conduct." *Id.* at 604 (emphasis added). There is no need to explain why the court is the proper forum to decide such a defense. However, the issue before this court does not involve abuse of the judicial process, but events which occurred prior to suit. Indeed, the court in *Reid Burton* stated that generally, equitable defenses are for the arbitrator. *Id.* This court finds that the issue of laches in this case is an issue for the arbitrator to resolve.

The company's final argument is that the court lacks jurisdiction over the person of the defendant because of the union's failure to effect service of process on the appropriate party. The court finds that the defendant has waived this defense by filing this motion for summary judgment. Fed.Rule Civ.Pro. 12(h)(1).

Therefore:

IT IS ORDERED that defendant's motion for summary judgment be, and it is hereby DENIED.

---

**1.** Questions of extrinsic timeliness may be distinguished from questions of "intrinsic" timeliness which involve whether time limits within the collective bargaining agreement itself have been met. Questions of intrinsic timeliness were held to be questions for the arbitrator in *John Wiley & Sons, supra.*