**AMALGAMATED TRANSIT UNION DIVISION 1560, et al.**

**v.**

**TRANSIT MANAGEMENT OF SOUTHEAST LOUISIANA, INC., et al.**

Civ. A. No. 88–511.

United States District Court, E.D. Louisiana.

Feb. 12, 1988.

William Lurye, Gardner, Robein & Healey, Metairie, La., for plaintiffs.

Michael S. Mitchell, McGlinchey, Stafford, Mintz, Cellini & Lang, T. Carey Wicker, Capetelli & Wicker, New Orleans, La., for defendants.

## ORDER AND REASONS

MENTZ, District Judge.

Plaintiffs commenced this action to enjoin the privatization of five RTA bus lines until the privatization issue can be resolved by arbitration.

On Friday, February 5, 1988 the Court denied plaintiffs' request for a temporary restraining order on the basis that no irreparable injury would occur prior to the preliminary injunction hearing set for Wednesday, February 9, 1988. The parties agreed to consolidate plaintiffs' action for a permanent injunction with the preliminary injunction hearing. The parties also stipulated that affidavits could be offered in lieu of live testimony. At the close of plaintiffs' case defendants moved for a directed verdict, properly named a motion for involuntary dismissal under Federal Rule of Civil Procedure 41(b). The Court took defendants' motion under submission and now renders its findings of fact and conclusions of law. To the extent that any findings of fact are conclusions of law, they are adopted as such; to the extent that any conclusions of law constitute findings of fact, they are so adopted.

## FINDINGS OF FACT

### I.

Amalgamated Transit Union Division 1560 (the Union) and Transit Management of Southeast Louisiana, Inc. (TMSEL) are signatory to a collective bargaining agreement, effective from July 1, 1986 through 12:00 midnight June 30, 1988, which requires the parties to arbitrate all disputes arising from the interpretation or application of the agreement. *See* Collective Bargaining Agreement, Articles 5 and 6.[1] The Union and TMSEL have also agreed to arbitrate any dispute regarding the privatization agreement of November 7, 1986. *See* Plaintiff's Exhibit I, Par. 5.[2]

---

1. Articles 5 and 6 of the collective bargaining agreement contain a broad dispute resolution procedure which provides, in pertinent part, as follows:

"ARTICLE 5—GRIEVANCE AND GRIEVANCE PROCEDURE
(a) As used herein, a grievance is defined as any dispute arising from the interpretation or application of this agreement....
(b) *Grievance Procedure*
A grievance as defined herein shall be considered in accordance with the following procedure....
(f) If the grievance or claim of unjust treatment is not settled by the foregoing procedure, the aggrieved party shall notify the other in writing within the ten (10) days following the next monthly Union membership meeting which is held after receipt of the other party's final answer if it desires to take the grievance to arbitration. Selection of arbitrators and the arbitration procedure shall be in accordance with ARTICLE 6....
(g) The arbitrators shall be selected and a hearing date set within 180 calendar days from the date of the notice that arbitration is desired.
ARTICLE 6—ARBITRATION AND ARBITRATION PROCEDURES
Section 1. In the event either the Company or the Union shall have demanded that a grievance be submitted to arbitration as hereinabove provided, the following procedure shall be observed
...
Section 3. The board of arbitration shall meet ... on every day that is practical for them to meet, until all evidence and arguments have been received and heard....
Section 4. The decision of the majority of the board of arbitration shall become final and binding on the parties of this agreement when delivered to them in writing. Any minority member of the board of arbitration shall have the right to indicate his dissent to all or any part of any decision that may be handed down by the board."
*See also AT & T Technologies, Inc. v. Communications Workers of America, et al.,* 475 U.S. 643, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) ("... where the contract contains an arbitration clause, there is a presumption of arbitrability ...").

2. Paragraph 5 of the agreement states:
In the event of any dispute between the parties regarding the application, interpretation, or enforcement of any of the foregoing provisions, the same shall be resolved in accordance with the provisions set forth in Articles 5 and/or 6 of the Collective Bargaining Agreement effective July 1, 1986, by and between TMSEL and Local 1560.

## II.

Privatization has not resulted in the layoff of any employees of Union 1560.

## III.

Mr. Cliff Franklin, Senior Director of Contract Operations of Greyhound Lines, Inc. (Greyhound) estimates that Greyhound will lose a minimum of $250,000 if the privatization project is enjoined. Affidavit of Cliff Franklin dated February 9, 1988, Par. 7.

Mr. James Mansbridge, General Manager of TMSEL, testified that privatization will save the company approximately $1,500 each weekday, $300 each Saturday, and $150 each Sunday. Affidavit of James Mansbridge dated February 9, 1988, Par. 3.

## CONCLUSIONS OF LAW

## I.

The Court has federal question jurisdiction under Section 301 of the Labor Management Relations Act of 1947 over actions for breach of a collective bargaining agreement. 29 U.S.C. § 185(c), 28 U.S. C. § 1331.

## II.

The Court's jurisdiction under this act includes jurisdiction to grant injunctive relief to preserve the *status quo* pending arbitration. *Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), *Seafarers International Union v. National Marine Services, Inc., et al.*, 639 F.Supp. 1283, 1286 (E.D.La.1986), *rev'd on other grounds*, 820 F.2d 148 (5th Cir.1987).

## III.

■ The requirements for granting *status quo* injunctive relief in support of arbitration are: (1) that the underlying grievance is subject to mandatory binding arbitration under a collective bargaining agreement; (2) that the party seeking the injunctive relief is ready and willing to submit the grievance to arbitration; and (3) that injunctive relief is warranted under ordinary principles of equity. *Seafarers*, 639 F.Supp. at 1286.

## IV.

■ The principles of equity which the Union must prove to obtain preliminary relief are (1) that the position the Union will espouse in arbitration is sufficiently sound to prevent arbitration from being a futile endeavor; (2) that the Union will suffer injury so irreparable that a decision of the arbitration board in the Union's favor would be but an empty victory; (3) that the threatened injury to the Union outweighs any threatened harm to the other parties; and (4) that granting the preliminary injunction will not disserve the public interest. *See, Id.* at 1286, f. 3, *Local Lodge No. 1266, etc. v. Panoramic Corporation*, 668 F.2d 276 (7th Cir.1981).

## V.

The parties have agreed that the dispute over the privatization plan is arbitrable and Mr. Eugene Camese, the Union's president, has testified that he submitted this grievance for arbitration on February 3, 1988. Therefore, the remaining element that plaintiffs must establish is that injunctive relief is warranted under principles of equity.

## VI.

■ The Court finds that plaintiffs will not suffer irreparable harm because the privatization will not render the arbitration process a hollow formality. The Union argues that the arbitrators will be less inclined to eliminate privatization if it is in operation. Though the Court understands plaintiffs' concern, this does not represent the type of harm that, by its occurrence, threatens the integrity of the arbitral process. Plaintiffs rely on cases in which a court enjoined the completion of a sale of corporate assets or the relocation of an industrial plant to another state. *See Local Lodge No. 1266*, 668 F.2d 276, *Lever Brothers Company v. International Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir.1976). However, similar compelling circumstances are not present

in the instant case. Plaintiffs' evidence does not indicate that an arbitration panel would be unable to award an adequate remedy, such as voiding the privatization contract, in the event it finds TMSEL in violation of its agreements. For these reasons plaintiffs have not proved irreparable harm.

### VII.

 Analysis of the third equitable principle, the balance of hardship to the parties, is not necessary because the Union's case for injunctive relief fails on the issue of irreparable harm. *See Aluminum Workers International Union v. Consolidated Aluminum Corporation,* 696 F.2d 437, 444 (6th Cir.1982). Nevertheless, it is clear from the record that plaintiffs' petition for an injunction would fail on this ground as well. Were a preliminary injunction issued, Greyhound would suffer a minimum of $250,000 in damages and TMSEL would lose profits amounting to $1500 each weekday, $300 each Saturday, and $150 each Sunday. Thus, plaintiffs' request for a thirty (30) day injunction would cost TMSEL $32,250. Meanwhile, plaintiffs have demonstrated no job layoffs or wage losses to union employees were a preliminary injunction denied.

The Court finds that plaintiffs have not presented sufficient evidence to obtain injunctive relief.

Accordingly, IT IS ORDERED that defendants' motion for involuntary dismissal is GRANTED and plaintiffs' application for injunctive relief is DENIED.

